UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| JOHN DOE, formerly known as JANE DOE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 1:16-cv-02431-JMS-DML |
| | ) | |
| MICHAEL PENCE, in his official capacity as Governor of the State of Indiana, GREGORY ZOELLER, in his official capacity as Attorney General for the State of Indiana, MYLA A. ELDRIDGE, in her official capacity as Marion County Clerk of the Court, LILIA G. JUDSON, in her official capacity as Executive Director of the Indiana Supreme Court Division of State Court Administration, | ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**ORDER**

Plaintiff John Doe, whose legal name is "Jane Doe", is a transgender man who resides in Marion County, Indiana.[1] He is originally from Mexico and has been granted asylum here in the United States. He seeks to legally change his name from Jane to John, so that his name conforms with his gender identity and physical presentation, which is male. Mr. Doe asserts that the Indiana statute governing name changes unconstitutionally prevents him from changing his name because it requires petitioners to provide proof of United States citizenship, which Mr. Doe, as an asylee, does not have.

Mr. Doe has brought suit against Defendants Governor Mike Pence ("Governor Pence"), Attorney General Gregory Zoeller ("Attorney General Zoeller"), Marion County Clerk of Court

---

[1] Per order of the Court, Mr. Doe proceeds anonymously. [Filing No. 42.]

1

Myla Eldridge ("Clerk Eldridge"), and the Executive Director of the Indiana Supreme Court Division of State Court Administration, Lilia Judson ("Director Judson"). Mr. Doe raises claims under the First Amendment to the United States Constitution and under the Equal Protection and Due Process Clauses of the Fourteenth Amendment. Presently pending before the Court are Defendants' Motions to Dismiss for lack of subject matter jurisdiction. [Filing No. 40; Filing No. 52.] For the reasons that follow, the Court grants the Defendants' Motions to Dismiss.

## I.
### BACKGROUND

Mr. Doe, whose legal name is "Jane Doe", is a 31-year old Latino who resides in Marion County, Indiana. [Filing No. 24 at 1.] Mr. Doe's family moved to Indiana from Mexico in 1990, and he has lived in Indiana since that time. [Filing No. 24 at 7.] Mr. Doe is transgender. [Filing No. 24 at 1.] This means that Mr. Doe was assigned the sex of female at birth, but his gender identity (his deeply felt understanding of his own gender) is male. [Filing No. 24 at 4-5.] The United States granted Mr. Doe asylum in 2015, finding that he risked facing persecution on account of his transgender status if he returned to Mexico. [Filing No. 24 at 7.] Mr. Doe was eligible to apply for permanent residency in September 2016. [Filing No. 24 at 7.]

Mr. Doe has been under the care of a licensed mental health clinician since 2010. [Filing No. 24 at 7.] She diagnosed Mr. Doe with Gender Dysphoria, a condition that is characterized by clinically significant distress that can result when a person's gender identity differs from the person's assumed gender (or assigned sex) at birth. [Filing No. 24 at 5-7.] Under the care of his clinician, Mr. Doe has been on hormone therapy since 2011, which has deepened Mr. Doe's voice, increased his growth of facial hair, and given him a more masculine appearance. [Filing No. 24 at 8.] Mr. Doe has also undergone gender-affirming surgery. [Filing No. 24 at 8.]

He is recognized on all of his official U.S. documents, including his Indiana State ID and his immigration documents, as male. [Filing No. 24 at 8.] But his legal name remains a traditionally female name. [Filing No. 24 at 8.] Mr. Doe is not recognized by others as transgender unless he tells them, or unless they see his ID, which identifies him by his legal, female name. [Filing No. 24 at 8.] Mr. Doe has experienced negative reactions and harassment on multiple occasions when he has presented his ID, because his female name does not match his male gender identity and expression. [Filing No. 24 at 9.] On one occasion, a police officer threatened to take him to jail because he did not believe that Mr. Doe was the individual identified in the ID. [Filing No. 24 at 9.] Others have ridiculed or harassed him. [Filing No. 24 at 9-10.] Mr. Doe is also afraid of being physically attacked because of being forced to reveal his transgender status. [Filing No. 24 at 11.]

Mr. Doe seeks to legally change his name, but he believes that he is barred from doing so by Indiana Code Section 34-28-2-2.5, the statute governing petitions for name changes in Indiana. [Filing No. 24 at 11.] That statute became effective in July 2010, and it states that a name-change petition must include, among other things, "[p]roof that the person is a United States citizen." I.C. § 34-28-2-2.5.[2]

In December 2013, Mr. Doe appeared in person at the Marion County Clerk's Office to inquire about petitioning for a change of legal name. [Filing No. 24 at 12.] When Mr. Doe requested name-change forms, he was told by employees of the Clerk's Office that U.S. citizenship was a legal requirement to change his name, and that "[i]f you do become a citizen, then we would have no problem changing your name." [Filing No. 24 at 12.] An employee also told him that

---

[2] The Court notes that its research has revealed no other state statute requiring proof of U.S. citizenship as a requirement for a name-change petition.

another non-citizen had attempted to change a legal name and that the change was rejected by a judge. [Filing No. 24 at 13.] He was also given an informational packet about name changes, including forms prepared by the Indiana Supreme Court Division of State Court Administration, which listed the citizenship requirement. [Filing No. 24 at 12-13.] Mr. Doe has not submitted a petition for legal name change. [Filing No. 52-2 at 6.]

Mr. Doe challenges the name-change statute as unconstitutional, alleging that it violates the First Amendment of the United States Constitution, and the Equal Protection and Due Process clauses of the Fourteenth Amendment.

## II.
### LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(1) "allows a party to dismiss a claim for lack of subject matter jurisdiction." *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). The burden is on the plaintiff to prove, by a preponderance of the evidence, that subject-matter jurisdiction exists for his or her claims. *See Lee v. City of Chicago*, 330 F.3d 456, 468 (7th Cir. 2003).

Article III of the Constitution grants federal courts jurisdiction over "cases and controversies[,]" and the standing doctrine is the tool used to identify which cases and controversies the federal judicial process can appropriately resolve. *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). Standing is "the threshold question in every federal case, determining the power of the court to entertain the suit." *Warth v. Seldin*, 422 U.S. 490, 498 (1975). "[T]he 'irreducible constitutional minimum' of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540, 1547 (2016) (internal citations omitted).

This Court's jurisdiction depends on "an actual controversy [that] must be extant at all stages of review, not merely at the time the complaint is filed." *Arizonans for Official English v. Arizona*, 520 U.S. 43, 67 (1997). Thus, if the controversy defined by a legal claim is no longer live, or the parties lack a legally cognizable interest in the outcome, the claim is moot, and the court must dismiss for want of jurisdiction. *See City of Erie v. Pap's A.M.*, 529 U.S. 277, 287 (2000); *North Carolina v. Rice*, 404 U.S. 244, 246 (1971) (per curiam) ("Mootness is a jurisdictional question because the Court 'is not empowered to decide moot questions or abstract propositions,' ... our impotence 'to review moot cases derives from the requirement of Article III of the Constitution under which the exercise of judicial power depends upon the existence of a case or controversy.'") (internal citations omitted).

### III.
#### DISCUSSION

The Defendants have moved to dismiss Mr. Doe's Complaint under Rule 12(b)(1), arguing that Mr. Doe lacks standing to bring the lawsuit.[3] [Filing No. 40; Filing No. 52.] Governor Pence, Attorney General Zoeller, and Director Judson (collectively the "Joint Defendants") argue that Mr. Doe has not established that he has standing because (1) he has not shown that he suffered an injury-in-fact; (2) any injury that he has suffered was not caused by the Joint Defendants; and (3) regarding Attorney General Zoeller and Director Judson, a favorable judgment against them would not redress Mr. Doe's alleged injury.[4] [Filing No. 41.]

---

[3] Attorney General Zoeller and Director Judson also state that they seek dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. As their arguments refer solely to standing issues under Rule 12(b)1), which is jurisdictional, the Court deems the 12(b)(6) argument to be abandoned.

[4] Clerk Eldridge did not join in the Joint Defendants' Motion, and her Motion will be treated separately.

**A. Joint Defendants**

The Joint Defendants contend that Mr. Doe has not suffered an injury-in-fact. They argue that he has not actually been denied a legal name change, because he has not submitted a petition requesting one. [Filing No. 41 at 7-8.] They argue that Mr. Doe merely speculates that such a petition would be denied, and that this speculation is not sufficient to confer Article III standing.[5] In addition, they contend that Mr. Doe may apply for a name change once he establishes citizenship, so his legal claim amounts to a question of timing. [Filing No. 41 at 9.]

They also argue that Mr. Doe has not established the required causation element of standing—that his alleged injuries were caused by the actions of the Joint Defendants. [Filing No. 41 at 8.] As to Governor Pence and Attorney General Zoeller, the Joint Defendants argue that the Governor's and Attorney General's duties to enforce the laws of the state are defined by statute, and that no duties are imposed on either of those individuals to enforce the statute at issue. [Filing No. 41 at 8.] Regarding Director Judson, they contend that the mere publication of a form cannot have caused Mr. Doe's alleged injuries. [Filing No. 41 at 9.]

And finally, the Joint Defendants argue that Mr. Doe has not established that a favorable decision against Attorney General Zoeller and Director Judson will result in any relief, as required by the "redressability" element of the standing requirement. [Filing No. 41 at 9-10.] They argue that because those two individuals do not have the authority to amend or repeal the challenged law, and because they are not the individuals who evaluate name-change petitions, any declaratory or injunctive relief against them would not effectuate any change. [Filing No. 41 at 9-10.]

---

[5] The Defendants also style this as a ripeness argument. As described below, the Court assumes without deciding that Mr. Doe has established an injury-in-fact and that this claim is ripe for the Court's review.

Mr. Doe responds that he has demonstrated that he meets the requirements to establish standing. As to injury-in-fact, Mr. Doe contends that because the statute explicitly requires U.S. citizenship as a precondition for a name change, there is no question that his petition, were he to file one, would be denied. [Filing No. 50 at 8.] He contends that he need not engage in the futile process of filing the petition in order to establish his injury. [Filing No. 50 at 8.] In addition, Mr. Doe argues that his eventual citizenship is not a foregone conclusion, and that any number of intervening events could bar his path to citizenship. [Filing No. 50 at 6.] Therefore, the operation of the name-change statute and his ability to legally change will not necessarily be cured by the passage of time. [Filing No. 50 at 6.]

Regarding causation, Mr. Doe argues that his injuries are fairly traceable to the actions of the Joint Defendants. [Filing No. 50 at 6.] Mr. Doe alleges that Governor Pence and Attorney General Zoeller "have a duty to enforce the law," and that this law's enforcement against him caused his injuries. [Filing No. 24 at 3; Filing No. 50 at 6-7.] Regarding redressability, Mr. Doe argues that a favorable decision against the Joint Defendants would redress his injuries because injunctive relief will allow him to petition for a name change. [Filing No. 50 at 7.]

As noted, the "irreducible constitutional minimum of standing consists of three elements. The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo,* 136 S. Ct. at 1547 (internal citations and quotations omitted). "The plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing these elements." *Id.* "Where, as here, a case is at the pleading stage, the plaintiff must clearly ... allege facts demonstrating each element." *Id.* (internal citation and quotation omitted).

The Court assumes without deciding that Mr. Doe has sufficiently pled injury-in-fact and focuses its analysis on the causation and redressability elements.

*1. Governor Pence*

Mr. Doe argues that his alleged injuries are fairly traceable to Governor Pence because Governor Pence has the "responsibility to ensure that the laws of the State are properly and constitutionally enforced." [Filing No. 24 at 3; *see* Filing No. 50 at 6.] However, Mr. Doe cites no statutory or other authority for the proposition that Governor Pence has a duty of enforcement with respect to the statute at issue. In his brief in opposition to the Motion for Summary Judgment, Mr. Doe cites only his Complaint for the proposition that Governor Pence has any enforcement authority with respect to Indiana Code Section 34-28-2-2.5. [Filing No. 50 at 6.]

The general authority to enforce the laws of the state is not sufficient to render a particular government official the proper party to litigation challenging a law. *See Hearne v. Board of Educ. Of City of Chicago*, 185 F.3d 770, 777 (1999) (holding in analogous Eleventh Amendment context that "the governor has no role to play in the enforcement of the challenged statutes…. Technically, therefore, it is not the Eleventh Amendment that bars the plaintiffs' action for prospective injunctive relief against the governor; it is their inability to show that he bears any legal responsibility for the flaws they perceive in the system."); *see also Okpalobi v. Foster*, 244 F.3d 405, 426 (5th Cir. 2001) ("The requirements of *Lujan* are entirely consistent with the long-standing rule that a plaintiff may not sue a state official who is without any power to enforce the complained-of statute."); *Shell Oil Co. v. Noel*, 608 F.2d 208, 211 (1st Cir. 1979) ("The mere fact that a governor is under a general duty to enforce state law does not make him a proper defendant in every action attacking the constitutionality of a state statute.").

Mr. Doe has not provided any specific allegations that Governor Pence is statutorily authorized or instructed to enforce Indiana Code Section 34-28-2-2.5. Nor has he alleged that Governor Pence acted in other ways to enforce the statute, such as by instructing state agencies or other officials on the implementation or enforcement of the statute. *See Love v. Pence*, 47 F. Supp. 3d 805, 807-08 (S.D. Ind. 2014) (concluding that the Governor was a proper defendant where memoranda showed that the Governor played a role in enforcing a statute that did not include specific enforcement authorization as to him). Absent any such allegations, Mr. Doe has not established that his alleged injuries are fairly traceable to Governor Pence. Moreover, if the Governor has no ability to enforce the challenged statute, he cannot redress Mr. Doe's injury. *See Hearne*, 185 F.3d at 777 (concluding that "plaintiffs have not and could not ask anything of the governor that could conceivably help their cause"); *see also Sweeney v. Daniels*, 2013 WL 209047, at *3 (N.D. Ind. 2013) (citing *Hearne*); *Mexicana v. State of Indiana*, 2013 WL 4088690, at **5-6 (N.D. Ind. 2013) (same).

For these reasons, the Court concludes that Mr. Doe has not met his burden to establish that he has standing to sue Governor Pence for his alleged injuries.

### 2. Attorney General Zoeller

Attorney General Zoeller raises the same arguments as Governor Pence regarding causation. And as with Governor Pence, Mr. Doe does not allege that Attorney General Zoeller is statutorily authorized or instructed to enforce Indiana Code Section 34-28-2-2.5. Mr. Doe has also not alleged that this statute encompasses enforcement of the criminal laws of the state, which, if alleged, could suffice to show an Attorney General's enforcement authority. *See Baskin v. Bogan*, 12 F. Supp. 3d 1144, 1152-53 (S.D. Ind. 2014), *aff'd*, 766 F.3d 648 (7th Cir. 2014) (concluding that the Attorney General had ability to criminally enforce compliance with related marriage

9

statutes and that "[t]he Attorney General has the broad authority to assist in the prosecution of any offense if he decides that it is in the public interest...Noting this broad authority, the court has previously found that the Attorney General is a proper party when challenging statutes regarding abortion.") (citing *Arnold v. Sendak*, 416 F.Supp. 22, 23 (S.D. Ind. 1976), *aff'd,* 429 U.S. 968 (1976) (finding "[t]he Attorney General thus has broad powers in the enforcement of criminal laws of the state, and is accordingly a proper defendant")).

As with Governor Pence, Mr. Doe has not sufficiently alleged that the Attorney General has the ability to enforce, or is currently enforcing, the challenged statute. Likewise, he has not established that the Attorney General can redress Mr. Doe's injury. The Court concludes that Mr. Doe has not met his burden to establish that he has standing to sue Attorney General Zoeller for his alleged injuries.

### 3. Director Judson

Mr. Doe alleges that his injuries have been in part caused by Director Judson, insofar as the forms published by her office "prevent or discourage non-citizens from accessing changes of legal name." [Filing No. 24 at 3.] As with Governor Pence and Attorney General Zoeller, Mr. Doe has not alleged that Director Judson is statutorily authorized or directed to enforce the statute at issue.

He appears to allege that Director Judson acts to enforce the statute by generating the forms referenced in the Amended Complaint. First, the Court notes that Mr. Doe has not provided a copy of the subject forms, so the Court does not have the benefit of reviewing their contents. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) ("when a plaintiff attaches to the complaint a document that qualifies as a written instrument, and [his] complaint references and relies upon that document in asserting [his] claim, the contents of that document become part of

the complaint and may be considered as such when the court decides a motion attacking the sufficiency of the complaint… we have taken a broader view of documents that may be considered on a motion to dismiss, noting that a court may consider, in addition to the allegations set forth in the complaint itself…documents that are central to the complaint and are referred to in it…") (internal citations omitted). The forms generated by Director Judson are both central to Mr. Doe's claim against her and referenced in the Amended Complaint.

Additionally, Mr. Doe has not alleged that the subject forms are mandatory—that is, he has not alleged that any of the Defendants, including Director Judson, required Mr. Doe to read or fill out the forms in order to submit his name-change petition for processing. In fact, he has not provided any allegations as to what role the forms play in the grant, denial, or processing of a name-change petition. Without any allegation regarding the role of the forms, Mr. Doe has not established that Director Judson acts to enforce the statute, and therefore that there is a causal connection between Director Judson and Mr. Doe's alleged injuries.

### B. Clerk Eldridge

Clerk Eldridge, in her separate Motion, also contends that Mr. Doe lacks standing to bring suit against her. She argues that whatever injuries Mr. Doe may have suffered were not caused by the Clerk, and that a favorable decision against the Clerk cannot remedy the alleged injuries. [Filing No. 53 at 4-5.] Clerk Eldridge points out that Mr. Doe requests injunctive relief requiring the Clerk "to accept and process petitions for a change of name from non-citizens." [Filing No. 53 at 4.] But, Clerk Eldridge contends, the Clerk already does this. [Filing No. 53 at 4.] Clerk Eldridge states that:

> [b]ecause the Clerk has no legal authority to screen court filings and substitute her staff's opinions for those of a judge—and because the Clerk's Office already accepts and processes name-change petitions from non-citizens and forwards them

11

to the appropriate court for resolution—[Mr.] Doe cannot trace any of his alleged injuries to the Marion County Clerk's conduct.

[Filing No. 53 at 4.] In other words, because the Clerk is already doing what Mr. Doe requests, she cannot have caused Mr. Doe's alleged injuries, and a favorable judgment against her would not afford Mr. Doe any relief. Clerk Eldridge also argues that this fact renders Mr. Doe's claim moot, because there is no "live controversy" between the parties. [Filing No. 53 at 6.]

Mr. Doe responds that the Clerk's Office "plays an active role in enforcing the statute" in "advising non-citizens, when asked, that they are ineligible for name changes; by maintaining and distributing literature that advertises the non-citizen exclusion; and by processing petitions through a discriminatory system in which non-citizens have no chance of success." [Filing No. 58 at 4.] Mr. Doe also argues that his injury would be redressed by a favorable decision against the Clerk, because she would be prevented from engaging in the activities listed above. [Filing No. 58 at 8.] Mr. Doe also responds that his claims against the Clerk are not moot, because "the Clerk's office admits that it continues to inform and advise non-citizen[s] that they are ineligible for a change of legal name, thus treating non-citizens differently from U.S. citizens." [Filing No. 58 at 10.]

In support of her Motion to Dismiss, Clerk Eldridge submitted the declaration of Russell Hollis, the Deputy Director of the Marion County Clerk's Office. [Filing No. 52-1.] She has also submitted Mr. Doe's responses to her first set of Requests for Admission. [Filing No. 52-2.] "The district court may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Ezekiel v. Michel*, 66 F.3d 894, 897 (7th Cir. 1995). The Court therefore considers these submissions in determining whether Mr. Doe has established that he has standing.

In his Declaration, Mr. Hollis attests that "[a]s a matter of policy, the Marion County Clerk's Office does not screen petitions to determine whether they meet the legal requirements for

12

a change of name." [Filing No. 52-1 at 3.] He states that "[w]hen a name-change petition is submitted, the Clerk's Office processes the petition and forwards it to the Circuit Court for resolution." [Filing No. 52-1 at 3.] Further, Mr. Hollis attests that "[s]pecifically, the Clerk's Office does not refuse name-change petitions on the grounds that they lack some information required under Indiana Code § 34-28-2-2.5. The legal sufficiency of a petition is a determination for a judge, not the Clerk's Office." [Filing No. 52-1 at 3.]

Mr. Doe does not refute any of these statements, so Mr. Doe does not allege that Clerk Eldridge enforces the statute by either denying or refusing to accept petitions from non-citizens. Instead, Mr. Doe argues that Clerk Eldridge enforces the statute by "advising non-citizens, when asked, that they are ineligible for name changes; by maintaining and distributing literature that advertises the non-citizen exclusion; and by processing petitions through a discriminatory system in which non-citizens have no chance of success." [Filing No. 58 at 4.]

Mr. Doe argues that the Clerk's role here is analogous to *Harris v. McDonnell*, 988 F. Supp. 2d 603 (D.W.V. 2013). In that case, a same-sex couple entered the Circuit Court Clerk's office and asked a deputy clerk whether same-sex couples could get married. The deputy clerk consulted with the Circuit Court Clerk, who responded that he "he had checked Virginia law and that same-sex couples could not get married in Virginia." *Harris*, 988 F. Supp. 2d at 612. The couple brought suit against the Clerk, among other government officials, requesting injunctive and declaratory relief. *Id.* at 605. The *Harris* court concluded that the couple had standing to sue the Clerk, as their injuries were fairly traceable to him. *Id.* at 613-14.

That court based its conclusion, however, on the fact that the Clerk was vested with the authority and responsibility to issue marriage licenses. The court concluded that:

> [a]s the Staunton Circuit Court Clerk, Roberts is tasked with issuing marriage licenses. A marriage license is precisely what plaintiffs seek. Because Roberts'

>official duties include issuing the very thing plaintiffs claim they have been unconstitutionally denied, their alleged injury is directly traceable to him. Roberts protests that he has no authority to amend Virginia law regarding same-sex marriage, nor the discretion to ignore it, yet he concedes that he has enforcement authority regarding the challenged law. It is this *enforcement authority* that makes the injury traceable to him, regardless of any discretion he does or does not possess.

*Id.* at 613-14 (emphasis added). As the above passage illustrates, the *Harris* court did not conclude that the Clerk's statement of the law constituted "enforcement" of the statute. Rather, the Clerk was tasked with issuing marriage licenses—*i.e.*, making a determination as to the eligibility of the applicants, and then granting or denying them the state's permission to proceed. It is that enforcement authority that rendered the plaintiffs' injury fairly traceable to the Clerk.

Analogous facts simply are not present here. Mr. Doe does not allege that Clerk Eldridge has or exercises the authority to grant or deny name change petitions. He alleges only that the Clerk's staff members answer questions about the requirements to petition, that the Clerk's office distributes information relating to the petition, and that the Clerk "process[es] petitions through a discriminatory system in which non-citizens have no chance of success." [Filing No. 58 at 4.] The Court cannot conclude that any of these activities constitute enforcement. And, the Court notes, if those activities were sufficient to constitute enforcement, Mr. Doe has identified no limit as to which statutes the Clerk could be properly seen as enforcing.

Mr. Doe has also not established that a judgment against Clerk Eldridge will afford him the relief he seeks. Clerk Eldridge has submitted evidence showing that the Clerk already accepts and processes petitions from non-citizens. Indeed, Mr. Doe's own experience confirms that this is the case, as he states in his Amended Complaint that a Clerk's office employee informed him that a non-citizen's petition had just been denied by a judge. [Filing No. 24 at 13.]

Mr. Doe has not established a causal connection between Clerk Eldridge and his alleged injuries, or that his alleged injuries would be redressed by a judgment against the Clerk.

## IV.
### CONCLUSION

For the aforementioned reasons, the Defendants' Motions to Dismiss pursuant to Rule 12(b)(1), [Filing No. 40; Filing No. 52], are **GRANTED,** and the case is **DISMISSED FOR LACK OF JURISDICTION**. Final judgment shall enter accordingly.

Date: March 13, 2017

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Thomas A. Saenz
MEXICAN AMERICAN LEGAL DEFENSE AND
tsaenz@maldef.org

Veronica Cortez
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATION FUND
vcortez@maldef.org

Matthew J. Barragan
MEXICAN AMERICAN LEGAL DEFENSE AND EDUCATIONAL FUND
mbarragan@maldef.org

Donald Eugene Morgan
OFFICE OF CORPORATION COUNSEL
donald.morgan@indy.gov

Thomas J.O. Moore
OFFICE OF CORPORATION COUNSEL
thomas.moore@indy.gov

Betsy M. Isenberg
OFFICE OF THE ATTORNEY GENERAL
Betsy.Isenberg@atg.in.gov

Matthew Keith Phillips
OFFICE OF THE ATTORNEY GENERAL
matthew.phillips@atg.in.gov

Barbara J. Baird
THE LAW OFFICE OF BARBARA J BAIRD
bjbaird@bjbairdlaw.com

Ilona M. Turner
TRANSGENDER LAW CENTER
ilona@transgenderlawcenter.org

Shawn Thomas Meerkamper
TRANSGENDER LAW CENTER
shawn@transgenderlawcenter.org

16